## Case No. 11,853.

### RIPLEY v. HARRIS et al.

[3 Biss. 199;[1] 16 Int. Rev. Rec. 118; 5 Chi. Leg. News, 13.]

Circuit Court, E. D. Wisconsin. April Term, 1872.

MORTGAGES—GRANTING CLAUSE —PRIORITIES—FUTURE ADVANCES—BANKS—SECURITIES TAKEN IN VIOLATION OF LAW.

1. In a contest between mortgagees, the clause creating the lien must prevail. A mortgage of one undivided fourth part of certain lands is not to be construed or enlarged by the description as being one undivided half part.

2. The mortgage first recorded is the prior lien.

3. Mortgage to secure future advances is valid, but it will not secure advances made by the mortgagee after he has actual notice of a subsequent mortgage, in the absence of a contract to make such advances.

4. It seems, that where the president of a bank takes in his own name a mortgage to secure loans made by the bank, at his instance, the bank is the creditor of the mortgagor, and also of the president while he holds the securities, and may either hold the president for the debt, or compel him to surrender the securities.

5. When the point that a security is invalid as having been taken in violation of the national banking act [of 1864 (13 Stat. 99)] is not made in the pleadings, it will not be acted upon by the court, although disclosed by the proofs.

[Dictum that the security is invalid disapproved in Graham v. National Bank of New York, 32 N. J. Eq. 808.]

In equity. This was a bill for foreclosure of a mortgage brought by the complainant against Charles L. Harris and wife, John Reynolds, the First National Bank of Madison, Napoleon B. Van Slyke, Andrew Sexton, and other lien creditors. Harris and Reynolds were partners in business at Jacksonport, in Door county, Wisconsin. As such partners, in their partnership name, on the 23d of November, 1868, they made their promissory notes to complainant, William Ripley, one for $500 payable sixty days after date, one for $1,500 payable five months after date, and the third for $3,000 payable seven months after date. On the same day John Reynolds and Charles L. Harris and w... , to secure the payment of said three notes with interest, executed and delivered to complainant a mortgage, expressing the consideration at $5,000, upon lands in said county of Door, and recorded in said county on the 27th day of November, same year. On the 5th day of June, 1868, one Michael Reynolds was the owner of an undivided half interest in said lands. John Reynolds, for the purpose of raising money to promote and carry on the business of Harris and Reynolds, made his bond to N. B. Van Slyke in the penal sum of $10,000, for the payment to the said Van Slyke, or assigns, of all money due on any note or notes, drafts or acceptances, or other evidences of debt, that then did or might thereafter exist against

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

John Reynolds, in favor of said Van Slyke, his heirs or assigns, and to save the said Van Slyke, his heirs or assigns, harmless against any liability for or on account of said Reynolds; and as security said Michael Reynolds made and delivered to Van Slyke a mortgage on "one undivided one-fourth interest or portion" of the premises described therein, "being an undivided one-half part of three thousand two hundred and twenty acres of land, on a portion of which is the steam saw mill, pier and buildings of Jacksonport; subject to the undivided one-half portion of $480 due the state of Wisconsin on school land certificates for a portion of the above land." The condition of said mortgage was, that John Reynolds should pay, or cause to be paid, to the party of the second part, Van Slyke, the sum of $5,000, according to the condition of a certain bond of John Reynolds, bearing even date therewith. This mortgage was recorded in Door county, June 16, 1868. April 22, 1869, in consideration of $5,000 paid by Andrew Sexton, Van Slyke assigned to him this mortgage and bond, to be collected by Sexton at his own expense, with covenant on the part of Van Slyke that he had good right to assign the same. The assignment was recorded in Door county, April 30, 1869. The complainant claimed that the Van Slyke mortgage was a lien on only the one-fourth interest in said land, and that as to the remainder, his was a valid first lien, and prayed a decree accordingly. The defendant, Sexton, answered, insisting that the Van Slyke mortgage assigned to him was a first lien upon the half interest which Michael Reynolds owed at the time it was given.

Wm. F. Vilas, for complainant.
S. U. Pinney, for Andrew Sexton.

MILLER, District Judge. The mortgage of Michael Reynolds to Van Slyke is a recorded mortgage lien on the one undivided fourth part of the premises described. That part of the description of the land as being the undivided half part cannot control the clause creating the lien, as against subsequent incumbrances. As to them the clause creating the lien is the test.

The record of this mortgage is constructive notice of an apparent lien in favor of Van Slyke to the amount of $5,000, according to the terms and conditions of the bond mentioned; and Ripley accepted his mortgage with that constructive notice. He might have inquired after the bond, to ascertain its real conditions, but he did not. He testifies that he never saw the bond, nor ever knew nor inquired what had been done under it. The mortgage did no injustice to Ripley. It was a legal lien for $5,000, expressed on its face, and of which he had lawful notice by the record. It was not required that the condition of the bond be recited in the mortgage. The reference to the bond

was sufficient. Shirras v. Caig, 7 Cranch [11 U. S.] 34. And a mortgage to secure future advances is valid. Lawrence v. Tucker, 23 How. [64 U. S.] 14. Such a mortgage is good to the amount specified in the bond. This mortgage stands as a security for the real equitable claims of the mortgagee, whether they existed at the date of the mortgage, or arose afterwards, but prior to the receipt of actual notice of a subsequent sale or mortgage.

The pleadings and proofs involve the equitable interests of the complainant under his mortgage, and of Andrew Sexton as assignee of N. B. Van Slyke's mortgage.

It is understood that there did not exist any indebtedness from Reynolds to Van Slyke at the date of the bond and mortgage. It is also understood that Sexton cannot acquire by the assignment of the bond and mortgage, a greater equity than Van Slyke had at the date of the assignment of these securities.

The notes of Reynolds had been discounted by the First National Bank of Madison, of which Van Slyke was the president, at his instance and request, made on the faith and credit of the securities. Notes were made by Reynolds and handed to Van Slyke, and he procured them to be discounted by the bank; and on the books of the bank the money was placed to the credit of Reynolds. The notes were renewed from time to time, until they came to be represented, so far as any indebtedness existed, by two notes of $2,000 each, numbered 3334, 3360, dated September 25, 1868, and prior to complainant's mortgage. These notes were payable to the First National Bank of Madison. It does not appear that they were indorsed by Van Slyke. They were a continuation of the original indebtedness.

Van Slyke, being president of the bank, had the bond and mortgage made to himself, the bank being prohibited by the national banking act of June 3, 1864, from taking real estate security for present loans. The loan was made by the bank, and Mr. Van Slyke's ingenuity does not relieve the bank from the imputation of violating the statutory prohibition. But the point of invalidity of the securities for this reason, is not made by the pleadings.

The bank became the creditor in fact of Reynolds, and Van Slyke stood as surety, the loan having been made by the bank at his request and on his responsibility. The bank could hold Van Slyke for the debt in equity, upon the strength of the securities of indemnity held by him in his own name. The bank had the legal right to hold Van Slyke for the debt, or to require him, in equity, to surrender the securities. The securities to Van Slyke were, in equity, securities to the bank, the real creditor. The legal liability of Van Slyke to the bank was not prohibited by the statute of frauds. It was not a promise to pay the debt of another, but an original contract with the bank,

upon which the loan was obtained. The two notes of $2,000 each fell within the condition of the bond and mortgage to Van Slyke.

Five thousand dollars were appropriated to the discharge of the two notes of $2,000, with interest, and the residue applied to the credit of Reynolds, on some other indebtedness to the bank.

It appears that Van Slyke, the president and agent of the bank, had notice of Ripley's mortgage in December, 1868. Reynolds, on the day of the transfer of the securities to Sexton, gave a note to Van Slyke, or bearer, for $5,000, payable at the bank one year after date. This was done under the impression that the mortgage of Reynolds was a lien for the full amount of the debt mentioned on its face, without regard to its reference to the condition of the bond. Van Slyke and the bank, upon the payment of $5,000 by Sexton, relinquished all further claim or right under the bond and mortgage, and to the note of John Reynolds, made at the same time, to Van Slyke or bearer, by which Van Slyke evidently intended all obligations or liability for the debt of Reynolds and all further interest in the securities to cease, and Sexton to collect the debt at his own cost and charges, as expressed in the assignment. And the note of $5,000, payable to Van Slyke or bearer, was intended as evidence that Sexton held an indebtedness against Reynolds equal in amount to the bond and mortgage.

The note of Reynolds, given in April, 1869, the time of the assignment of the securities to Sexton, was merely an evidence of a personal promise on the part of Reynolds for the difference between the two $2,000 notes and the note of $5,000. For this difference the mortgage was no security, being an advance made subsequent to the 10th December, 1868, when Van Slyke had notice of Ripley's mortgage, and he was not under obligation to make further advances upon such note. Equity excludes both Van Slyke and Sexton as to the surplus over the two notes and interest. To that extent Sexton has a prior lien on the one undivided fourth part of the mortgaged premises. Decree accordingly.